## 33524. ROBBINS et al. v. NATIONAL BANK OF GEORGIA et al.

MARSHALL, Justice.

In the present case William R. Robbins seeks to set aside a consent judgment taken between him and Gordon P. Kiser, Jr. The consent judgment provided for the distribution of the estate of Jane Kiser Robbins between William R. Robbins, her husband, and Kiser, her brother. The deceased, who was not a resident of Georgia, died intestate, and under the law of her domicile Robbins and Kiser are her only surviving heirs at law.

The deceased's mother, Jennie English Kiser, died on February 2, 1974, a resident of Fulton County, Georgia. At her mother's death, Jane Kiser Robbins became entitled to her (Jane Kiser's) interest as a vested remainderman of a testamentary trust established by her grandfather, James W. English, also a Georgia resident. The corpus of this trust consisted of securities, which at the time of Jennie English Kiser's death were being held by the First National Bank of Atlanta, one of the trustees.

After her mother died, Jane Kiser Robbins directed that these securities be held by a nominee of the First National Bank of Atlanta pending further direction by her as to the final distribution to be made. Jane Kiser Robbins died intestate as a Pennsylvania domiciliary on June 24, 1974, with the securities still in the hands of the First National Bank of Atlanta. In August of 1974, the National Bank of Georgia was appointed as Georgia administrator for the deceased's estate. In addition, William R. Robbins had qualified as the Pennsylvania domiciliary administrator for her estate.

In August of 1974, the trustees under the will of James W. English filed a petition in Fulton Superior Court seeking equitable direction as to whether to deliver the aforementioned securities to Jane Kiser Robbins' Georgia ancillary administrator (National Bank of Georgia) or her Pennsylvania domiciliary administrator (William R. Robbins). Both William R. Robbins and Gordon P. Kiser, Jr., were parties to this proceeding. William R. Robbins was represented by a Pennsylvania attorney. The parties at interest, Robbins and Kiser, entered into a settlement agreement which was incorporated into a consent judgment of the Fulton Superior Court. The parties stipulated that the Fulton Superior Court had subject-matter jurisdiction of the action and jurisdiction over the parties. It was provided that the Georgia administrator would receive the assets and administer them in accordance with the Georgia law, provided only that the Statute of Intestate Succession of Pennsylvania would determine the persons entitled to the property. See Pennsylvania Consolidated Statutes Anno., Title 20. Decedents, Estates and Fiduciaries, Ch. 21. Intestate Succession, 20 Pa. C. S. A. §§ 2101 through 2114. After all debts, taxes, and expenses of administration were paid by the Georgia administrator, the domiciliary administrator was ordered to distribute the first $20,000 of the estate to William R. Robbins from domiciliary assets and the balance of the assets remaining in the hands of the Georgia administrator were to be divided and distributed to Kiser and Robbins in such portions as to effect an equal distribution of the entire estate between them.

In June of 1976, the National Bank of Georgia filed a petition for equitable direction in the Fulton Superior Court seeking a determination of whether discovery of the Pennsylvania Federal Estate Tax Apportionment Statute (Chap. 37. Estate Tax Apportionment, 20 Pa. C. S. A. §§ 3701 through 3705), which would insulate William Robbins' share of his deceased wife's estate from federal estate tax liability, was grounds for invalidating the consent judgment. Robbins answered and alleged that the administration of his wife's estate in Georgia had been improper because she was a Pennsylvania domiciliary and owned no assets here.

Subsequently in June of 1977, Robbins filed an independent equitable action in the Fulton Superior Court to set aside the consent judgment on grounds of breach of fiduciary duty which the trustees of the English trust and the ancillary administrator owed him, and also on the grounds of mistake and fraud. The cases were consolidated for decision. The Fulton Superior Court upheld the validity of the ancillary administration. In addition, the court refused to set aside the consent judgment, on grounds of estoppel and because no ground for such equitable relief had been shown.

1. In the first enumeration of error the appellant argues that the Probate Court of Fulton County lacked jurisdiction to issue letters of administration on Jane Kiser Robbins' estate.[1]

---

[1] We review this enumeration of error on its merits, even though one of the provisions of the consent judgment specified that the Fulton Superior Court had subject-matter jurisdiction, since the parties cannot by their consent invest a court with subject-matter jurisdiction where none exists. *Trammell v. Trammell,* 220 Ga. 293 (138 SE2d 562) (1964); *Undercofler v. Ernhardt,* 111 Ga. App. 598 (142 SE2d 317) (1965). However, we do note that even if the judgment were invalid for lack of jurisdiction, the settlement agreement would still be binding on the parties as a contract. *Kidd v. Huff,* 105 Ga. 209 (1) (31 SE 430) (1898). See also *Allen v. Withrow,* 215 Ga. 388 (110 SE2d 633) (1959) and cits.

Under Code Ann. § 113-1211, if the deceased is not a resident of Georgia, application for letters of administration must be made in some county where the deceased's estate or some portion thereof is located. Under Code Ann. § 24-1902, the ordinary (now probate judge) cannot grant administration upon the estate of a nonresident unless the nonresident has property in the county or a bona fide cause of action against some person in the county.

Jane Kiser Robbins had both property in Fulton County and a bona fide cause of action against a person in that county, providing a plenary jurisdictional base for granting administration of her estate in Fulton County. At the time of her death, Jane Kiser Robbins owned securities from the residuary estate of her grandfather, which were being held by a nominee of the First National Bank of Atlanta in Fulton County. "If a non-resident of the state dies, owning bonds and promissory notes, which are in the possession of one residing in a county of this state, such person may be said to have property in that county, and . . . the ordinary thereof may grant administration on his estate." *McLaren v. Bradford,* 52 Ga. 648, 653 (5) (1874). Accord, *Neal v. Boykin,* 132 Ga. 400 (64 SE 480) (1909). At the time of her death, Jane Kiser Robbins also had a claim against her mother's estate, the situs of which was in Fulton County. This claim was prosecuted by the ancillary administrator in the courts of Fulton County and decided adversely to Jane Kiser Robbins in a judgment rendered by the Fulton Superior Court, which was eventually affirmed by this court. See *Nat. Bank of Ga. v. First Nat. Bank of Atlanta,* 234 Ga. 734 (218 SE2d 23) (1975). "Generally speaking, before there can be an administration, there must be some estate to administer . . . The leaving of an estate by the deceased is jurisdictional . . . The question then is, was there anything for the administrator to do? . . . Cases can be conceived where there is no tangible estate, but where there is something to be done by an administrator which in contemplation of law may create an estate, such as suing for the death of a decedent. . . In such cases an administrator should be appointed." *Durden v. Wright,* 143 Ga. 62, 63 (84 SE 125) (1915).

The appellant's argument, that in order for there to be an administration in Georgia of a nonresident's estate the nonresident must own "tangible" property in Georgia, has been decisively rejected in the foregoing decisions. The first enumeration of error is clearly without merit.

2. The appellant argues in the second and third enumerations of error that the trial court erred in granting the appellees' motions for judgment on the pleadings. The appellant contends that the failure of the trustees of the English trust and the ancillary administrator to inform him of the existence of the Pennsylvania statute constitutes a breach of fiduciary duty[2] and a species of fraud, entitling him to set aside the consent judgment in equity. The appellant stresses that Gordon P. Kiser, Jr., was one of the trustees of the English trust, thus creating a conflict of interest between Kiser, as one of the fiduciaries, and the appellant.

At the outset, we reject the argument that any of the parties breached any fiduciary duty owed to the appellant. As administrator of Jane Kiser Robbins' estate, the National Bank of Georgia owed both of her heirs, Kiser and Robbins, a fiduciary duty. See *Ringer v. Lockhart,* 240 Ga. 82 (239 SE2d 349) (1977). The National Bank of Georgia's filing of what was in essence an interpleader action, which named both Kiser and Robbins as claimants, was therefore the appropriate course of action to take. Both Kiser and Robbins obtained their own counsel, and Robbins was, in fact, represented by a Pennsylvania attorney. Whatever fiduciary duties the

---

[2] The National Bank of Georgia admitted in its answer that it owed the appellant a fiduciary duty. The trustees of the English trust answered that they were without sufficient knowledge to form a belief as to whether they owed the appellant a fiduciary duty at the time the settlement agreement and consent judgment were taken. In this appeal, the suggestion is made that at that time the relationship between the trustees and the appellant was more in the nature of a bailor-bailee relationship than a trustee-beneficiary relationship.

National Bank of Georgia, Gordon P. Kiser, Jr., and the other trustees of the English trust previously owed the appellant, at this point the obligation to represent his interests and investigate his case was on his own attorney. The failure of the appellees to discover and advise the appellant of the existence of the Pennsylvania estate tax apportionment statute did not constitute a breach of any duties any of these parties owed to the appellant.

The real issues for decision are whether the judgment is subject to being set aside for either fraud or mistake. Under Code Ann. § 81A-160 (e) (Ga. L. 1966, pp. 609, 662; as amended), a complaint in equity may be brought to set aside a judgment for fraud, accident or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant.

The mere allegations in the complaint, that the trustees and ancillary administrator failed to advise the appellant of the existence of the Pennsylvania statute, do not constitute facts which, if proved, would lead to the conclusion that fraud has been committed, as required by Code Ann. § 81A-109 (b) (Ga. L. 1966, pp. 609, 620). *Continental Investment Corp. v. Cherry,* 124 Ga. App. 863 (2) (186 SE2d 301) (1971). As we have held in Division 1, supra, the appellees were under no duty to discover and inform the appellant of the existence of the estate tax apportionment statute. The appellant does not allege that the appellees had knowledge that the statute existed or that they made any misrepresentations as to whether or not the statute existed. In any event, the rule is well settled that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law. *Cotton States Mut. Ins. Co. v. Booth,* 116 Ga. App. 410 (157 SE2d 877) (1967). The trial court did not err in granting the appellees' motion for judgment on the pleadings on the issue of fraud.

Nor did the appellant allege any facts in the complaint sufficient to withstand the appellees' motion for judgment on the pleadings on the issue of mistake. To be remediable at equity, the mistake must be one of past or present fact and not one of law. See, e.g., *Knight v. Dept. of Transportation,* 239 Ga. 368 (236 SE2d 826) (1977);

*Gignilliat v. Borg,* 131 Ga. App. 182 (205 SE2d 479) (1974). " 'Mere ignorance of the law on the part of the party himself, where the facts are all known, and there is no misplaced confidence, and no artifice or deception or fraudulent practice is used by the other party either to induce the mistake of law or to prevent its correction, shall not authorize the intervention of equity.' § 37-209." *Callan Court Co. v. C & S Nat. Bank,* 184 Ga. 87, 128 (190 SE 831) (1937). " 'The rule is well settled that a simple mistake by a party as to the legal effect of an agreement which he executes, or as to the legal result of an act which he performs, is no ground for either defensive or affirmative relief.' " *Callan Court Co.,* supra, at p. 130.

3. In the final enumeration of error, the appellant argues that the Georgia administrator was bound to apply the Pennsylvania estate tax apportionment statute in administering the deceased's estate, notwithstanding the agreement of the heirs to the contrary.

In the absence of an agreement among the heirs of an intestate or a provision in a will to the contrary,[3] it would appear as though the intestate succession to personal property is governed by the law of the deceased's domicile. *Fenn v. Castelanna,* 196 Ga. 22 (25 SE 796) (1943); *Thomas v. Morrisett,* 76 Ga. 384 (1886); *Squire v. Vazquez,* 52 Ga. App. 215 (183 SE 127) (1935). Here, however, the appellant, as one of the deceased's two heirs, entered into an agreement, incorporated into a consent judgment, that only one provision of the domiciliary law would be applied in the administration of the estate. Therefore, he is estopped to complain that another provision, not agreed to, was not applied. See, e.g., *Seaman v. Ratteree,* 231 Ga. 482, 484 (202 SE2d 454) (1973); *McCook v. Beck,* 138 Ga. App. 351 (226 SE2d 72) (1976); *Saturday v. Saturday,* 224 Ga. 236 (161 SE2d 509) (1968).

---

[3] Since the courts generally give effect to a provision in a will bequeathing personal property that the law of a jurisdiction other than the testator's domicile will govern (See, e.g., Re Pfizer's Estate, 33 N. J. Super. 242 (110 A2d 40), affd. 17 N.J. 40 (110 A2d 54); Smith v. Mercantile Trust Co., 199 Md. 264 (86 A2d 504); Re Firth's Estate,

*Judgment affirmed. All the Justices concur.*

ARGUED MAY 8, 1978 — DECIDED JULY 6, 1978.

*Douglas T. Noonan, Hugh G. Head,* for appellants.
*Powell, Goldstein, Frazer & Murphy, Frank S. McGaughey, William Linkous, Hansell, Post, Brandon & Dorsey, William J. Seigler, III, John H. Boman, Jr.,* for appellees.

205 Misc. 101 (127 NYS2d 407); Re Kadjar's Estate, 200 Misc. 268 (102 NYS2d 113), affd. 279 App. Div. 1008 (113 NYS2d 245), app. den. 280 App. Div. 777 (113 NYS2d 678)), we can see no reason not to give effect to such a provision in an agreement among the heirs of an intestate.