430 So.2d 909 (1983)
Henry Lee KEY, Appellant,
v.
STATE of Florida, Appellee.
No. AI-480.
District Court of Appeal of Florida, First District.
February 8, 1983.
Rehearing Denied May 23, 1983.
Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and David P. Gauldin, Asst. Atty. Gen., Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final judgment entered on a jury verdict, adjudicating appellant guilty of sexual battery and robbery. Appellant urges, inter alia, that we re-examine this court's holding in Clark v. State, 379 So.2d 372 (Fla. 1st DCA 1980), regarding admissibility of statements made by a witness who has previously undergone hypnosis. We affirm the trial court on all points raised on appeal but deem some discussion appropriate on the issue of admissibility of hypnotically enhanced testimony.
In Clark v. State, supra, we held that an identification made after a witness's memory was refreshed through hypnosis was admissible and that the credibility of the testimony was a question for the jury, holding (379 So.2d at 375):[1]

*910 Smith's identification was made not while in a hypnotic state, but from his present recollection refreshed by his having been put under hypnosis. The credibility thereof was for the jury to determine.
Many courts considering the question have held such testimony admissible, reasoning generally that testimony of a witness whose memory has been revived through hypnosis should be treated in the same manner as other testimony based upon present recollection refreshed.[2]
We note that recent decisions in a number of states have adopted a blanket rule against the admission of testimony that has been refreshed by hypnosis.[3] These decisions have applied the "general acceptance rule" enunciated in Frye v. United States, 293 F. 1013 (D.C. Cir.1923). The court in Frye held inadmissible expert testimony based upon the results of a "systolic blood pressure deception test" because the court in 1923 found that the test "[had] not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made."[4] The "general acceptance rule" has since been applied to determine admissibility of expert testimony based upon scientific techniques in such diverse fields as voiceprint analysis,[5] ion microprobic analysis of hair,[6] neutron activation analysis of bomb package fragments,[7] psychiatric diagnosis,[8] polygraph examination,[9] and infrared detection of aircraft.[10]
Florida courts consider this general acceptance rule in determining admissibility of testimony based upon scientific evidence, while holding that the trial judge has wide discretion concerning admissibility of evidence. See, e.g., Kaminski v. State, 63 So.2d 339 (Fla. 1953), cert. denied, 348 U.S. 832, 75 S.Ct. 55, 99 L.Ed. 656 (1954) (lie dector evidence  disallowed); Coppolino v. State, 223 So.2d 68 (Fla. 2d DCA 1968), dismissed, 234 So.2d 120 (Fla. 1969), cert. denied, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 794 (1970) (toxicology tests  allowed); and Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982) (hair analysis  allowed).
*911 After careful examination of the cases cited for both sides of the question, we decline to recede from our opinion in Clark v. State, supra. We find no basis for applying Frye's rule to disallow the victim's hypnotically refreshed testimony in this case or to preclude as incompetent the testimony of the witness whose recollection has been refreshed by hypnosis.[11] We hold that the admissibility of such evidence is within the discretion of the trial court and that a ruling regarding admissibility will not be disturbed absent a showing of an abuse of discretion. However, some guidelines to the exercise of that discretion should be considered.
In its well-reasoned opinion in State v. Hurd, 86 N.J. 525, 432 A.2d 86, 96-97 (1981), the Supreme Court of New Jersey states predicates for admissibility of testimony which has been enhanced or refreshed by hypnosis as follows:[12]
First, a psychiatrist or psychologist experienced in the use of hypnosis must conduct the session. This professional should also be able to qualify as an expert in order to aid the court in evaluating the procedures followed. Although we recognize that there are many people trained to administer hypnosis and skilled in its use for investigative purposes, we believe that a professional must administer hypnosis if the testimony revealed is to be used in a criminal trial. In this way, the court will be able to obtain vital information concerning the pathological reason for memory loss and the hypnotizability of the witness. Furthermore, the expert will be able to conduct the interrogation in a manner most likely to yield accurate recall.
Second, the professional conducting the hypnotic session should be independent of and not regularly employed by the prosecutor, investigator or defense. This condition will safeguard against any bias on the part of the hypnotist that might translate into leading questions, unintentional clues, or other suggestive conduct.
Third, any information given to the hypnotist by law enforcement personnel or the defense prior to the hypnotic session must be recorded, either in writing or another suitable form. This requirement will help the court determine the extent of information the hypnotist could have communicated to the witness either directly or through suggestion.
Fourth, before inducing hypnosis the hypnotist should obtain from the subject a detailed description of the facts as the subject remembers them. The hypnotist should carefully avoid influencing the description by asking structured questions or adding new details.
Fifth, all contacts between the hypnotist and the subject must be recorded. This will establish a record of the pre-induction interview, the hypnotic session, and the post-hypnotic period, enabling a court to determine what information or suggestions the witness may have received during the session and what recall was first elicited through hypnosis. The use of videotape, the only effective record of visual cues, is strongly encouraged but not mandatory.
Sixth, only the hypnotist and the subject should be present during any phase of the hypnotic session, including the prehypnotic testing and the post-hypnotic interview. Although it may be easier for a person familiar with the investigation to conduct some of the questioning, the risk of undetectable, inadvertent suggestion is too great, as this case illustrates. Likewise, the mere presence of such a person may influence the response of the subject.
*912 Although the foregoing six safeguards are stated in mandatory form in Hurd, supra, we agree with the Supreme Court of Wyoming in Chapman v. State, 638 P.2d 1280 (Wyo. 1982), that an attack on credibility is the proper method to determine the value of the testimony of a previously hypnotized witness and that the six safeguards enunciated in Hurd have a bearing on the credibility of such a witness, but they are not requirements determining competency of the witness to testify. Thus, in Chapman, supra, the court holds (638 So.2d at 1284):
An attack on credibility is the proper method to determine the value of the testimony of a previously hypnotized witness. Any one or all of the six points [from Hurd case, supra] may, or may not, have bearing on the credibility of such witness in a given use. But to make the six points a foundation requirement to the competency of the witness is improper and unworkable.
We commend the procedural safeguards set out in Hurd, supra, for consideration by the trial courts in their determination of the reliability of testimony from a witness whose memory has been hypnotically refreshed, but we do not adopt them as prerequisites to the admissibility of such testimony. Implementation of these workable safeguards by the trial courts will protect the accused from unreliable evidence while preventing the blanket exclusion of testimony refreshed through the use of hypnosis, a valuable resource when dealing with traumatized victims of crime.
We note that five of the six Hurd, supra, safeguards were implemented in this case. The only safeguard lacking was a recording of the hypnotic sessions. The psychiatrist who conducted the sessions testified that he did not record them because he did not anticipate having to testify at trial; he employed hypnosis in a therapy context to help alleviate the victim's stress and trauma.[13] Under the circumstances, we find no abuse of discretion on the part of the trial court in admitting the victim's testimony.
The judgment is affirmed.
WENTWORTH, J., and McCORD (Retired), ASSOCIATE J., concur.
NOTES
[1] Statements made while a person is under hypnosis have been found by Florida courts to be inadmissible. See Shockey v. State, 338 So.2d 33 (Fla. 3d DCA 1976), cert. denied, 345 So.2d 427 (Fla. 1977); Rodriguez v. State, 327 So.2d 903 (Fla. 3d DCA 1976), cert. denied, 336 So.2d 1184 (Fla. 1976).
[2] Clark v. State, 379 So.2d 372 (Fla. 1st DCA 1980); Creamer v. State, 232 Ga. 136, 205 S.E.2d 240 (1974); People v. Smrekar, 68 Ill. App.3d 379, 24 Ill.Dec. 707, 385 N.E.2d 848 (1979); Strong v. State, 435 N.E.2d 969 (Ind. 1982); State v. Greer, 609 S.W.2d 423 (Mo. App. 1980), vacated on other grounds, 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981); State v. McQueen, 295 N.C. 96, 244 S.E.2d 414 (1978); State v. Hurd, 86 N.J. 525, 432 A.2d 86 (1981); State v. Beachum, 643 P.2d 246 (N.M. App. 1981); State v. Glebock, 616 S.W.2d 897 (Tenn.Cr.App. 1981); State v. Jorgensen, 8 Or. App. 1, 492 P.2d 312 (1971); State v. Long, 32 Wash. App. 732, 649 P.2d 845 (1982); Chapman v. State, 638 P.2d 1280 (Wyo. 1982). See also Lawson v. State, 280 N.W.2d 400 (Iowa 1979), and Commonwealth v. Juvenile, 381 Mass. 727, 412 N.E.2d 339 (1980).
[3] State ex rel. Collins v. Superior Court, 132 Ariz. 180, 644 P.2d 1266 (Ariz. 1982); People v. Shirley, 181 Cal. Rptr. 243, 641 P.2d 775, 641 P.2d 775 (1982); Collins v. State, 52 Md. App. 186, 447 A.2d 1272 (1982); People v. Gonzales, 108 Mich. App. 145, 310 N.W.2d 306 (1981); State v. Blanchard, 315 N.W.2d 427 (Minn. 1982); State v. Palmer, 210 Neb. 206, 313 N.W.2d 648 (1981); People v. Hughes, 88 A.D.2d 17, 452 N.Y.S.2d 929 (N.Y. App. Div. 1982); Commonwealth v. Nazarovitch, 496 Pa. 97, 436 A.2d 170 (1981), but see Commonwealth v. Taylor, 294 Pa.Super. 171, 439 A.2d 805 (1982).
[4] Frye v. United States, 293 F. 1013, 1014 (D.C. Cir.1923).
[5] United States v. McDaniel, 538 F.2d 408 (D.C. Cir.1976).
[6] United States v. Brown, 557 F.2d 541 (6th Cir.1977).
[7] United States v. Stifel, 433 F.2d 431 (6th Cir.1970), cert. denied, 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531.
[8] Hughes v. Mathews, 576 F.2d 1250 (7th Cir.1978), cert. dismissed, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94.
[9] United States v. Alexander, 526 F.2d 161 (8th Cir.1975).
[10] United States v. Kilgus, 571 F.2d 508 (9th Cir.1978).
[11] Brown v. State, 426 So.2d 76 No. AE-96 (Fla. 1st DCA, filed February 8, 1983).
[12] We note that the trial court in State v. Hurd, 86 N.J. 525, 432 A.2d 86, 90 (1981), required the state to show that "there was no impermissibly suggestive or coercive conduct by the hypnotist and law enforcement personnel connected with the hypnotic exercise." On appeal, however, the New Jersey Supreme Court ruled that "since the state bears the burden of demonstrating reliability by clear and convincing proof, any other showing of suggestiveness amounting to a constitutional violation should be the burden of the defendant." Id. 432 A.2d at 98.
[13] In this case, defendant was charged with sexual battery and robbery. The victim gave police a detailed description on the day of the attack and identified photographs of defendant from two separate photographic lineups a few days later. The defendant participated in a lineup four months later, at which the victim failed to identify him. Several weeks later, the victim identified the defendant from among several persons coming out of an elevator at the courthouse, an inadvertent meeting. However, she failed to identify him at a revocation of probation hearing immediately thereafter. The victim sought psychiatric help to alleviate her confusion over her inability to identify the defendant in stressful situations. Two psychiatrists expressed the opinion that the victim may have been so fearful of reprisals from her attacker that repression resulted when she saw him in person, explaining her failure to identify him at the lineup and at the hearing.

On appeal, the defendant asserts that the trial court erred in allowing the victim to identify the defendant in court and in allowing the testimony of the victim and her psychiatrist relating to hypnotherapy.